[Cite as *State v. Patterson*, 2017-Ohio-8196.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 16CA011035 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TRAMELL PATTERSON, SR. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 16CR093862 |

DECISION AND JOURNAL ENTRY

Dated: October 16, 2017

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant, Tramell Patterson appeals his convictions in the Lorain County Court of Common Pleas. For the reasons that follow, we affirm.

I.

{¶2} Patterson and J.P. were married in 2008 and have three children together. Patterson and J.P. separated in 2009. In 2014, J.P.'s boyfriend, R.W. moved into J.P.'s Middle Avenue apartment in the City of Elyria.

{¶3} On April 18, 2016, between 6:00 a.m. and 6:30 a.m., J.P. awoke to banging on her front door. When J.P. opened the door, Patterson entered the apartment and refused to leave. Patterson eventually went upstairs and confronted R.W. At that point, R.W. grabbed a steak knife. Patterson retreated down the stairs and grabbed a large kitchen knife. R.W. followed Patterson down the stairs and exited the apartment upon seeing Patterson with the kitchen knife. Patterson locked the apartment door after R.W. exited. J.P. and Patterson's children were

awoken by the commotion. J.P. told the children to go into her bedroom. R.W. called the police and reported the incident.

{¶4} Several officers of the City of Elyria Police Department were dispatched to the scene, including Officers Van Kerkhove, Witt, Miracle, and Loesch. After speaking with the parties involved, the officers informed Patterson he was going to be placed under arrest. Thereafter, Patterson began to struggle with the officers. The officers ultimately had to tase Patterson twice before being able to place him under arrest.

{¶5} The Lorain County Grand Jury indicted Patterson on the following charges: (I) aggravated burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree; (II) aggravated burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree; (III) obstructing official business, in violation of R.C. 2921.31(A), a felony of the fifth degree; (IV) aggravated menacing, in violation of R.C. 2903.21(A), a misdemeanor of the first degree; (V) domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree; and (VI) resisting arrest, in violation of R.C. 2921.33(A), a misdemeanor of the second degree. Patterson entered a plea of not guilty and the matter proceeded through the pretrial process.

{¶6} The matter was ultimately tried to a jury. At the close of the State's evidence, the trial court granted Patterson's Crim.R. 29 motion for acquittal as to the domestic violence charge. The defense rested thereafter. After deliberations, the jury found Patterson not guilty of the two counts of aggravated burglary, but guilty of obstructing official business, aggravated menacing, and resisting arrest. The trial court sentenced Patterson to 11 months imprisonment on the obstructing official business charge, 60 days in jail on the aggravated menacing charge, and 30 days in jail on the resisting arrest charge. The trial court ordered the sentences to be served concurrently.

{¶7}   On appeal, Patterson raises two assignments of error for our review.

II.

**Assignment of Error I**

**The evidence was insufficient to support the jury's verdict of "guilty" with respect to the obstructing official business, aggravated menacing, and resisting arrest counts of the indictment, and those convictions were against the manifest weight of the evidence.**

{¶8}   In his first assignment of error, Patterson contends that his convictions for obstructing official business, aggravated menacing, and resisting arrest were based on insufficient evidence. Alternatively, Patterson argues that those convictions are against the manifest weight of the evidence. We disagree on both points.

{¶9}   A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Upon review, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct the review de novo, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

{¶10}   This matter implicates Patterson's convictions for obstructing official business, aggravated menacing, and resisting arrest. First, Patterson argues that the state failed to present sufficient evidence to show that Patterson created a risk of physical harm necessary to support a felony level conviction for obstructing official business. Alternatively, Patterson argues that the state failed to present sufficient evidence at trial to establish venue with regard to any of Patterson's convictions.

## A. Risk of Physical Harm

{¶11} The essential elements of felony obstructing official business are stated in R.C. 2921.31 as follows:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

> (B) Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

{¶12} Patterson argues that the evidence was insufficient to prove he created a risk of physical harm because he opened the door when the officers knocked, was not carrying a weapon, did not appear to be under the influence of alcohol, did not assault or injure any of the officers, and fully complied after being tasered twice.

{¶13} Officers Van Kerkhove, Miracle, and Loesch of the City of Elyria Police Department all testified on behalf of the State. Officer Loesch stated that although another officer attempted to "talk him down a few times," Patterson "continued to get more and more aggressive and more and more agitated." Officer Loesch further testified that after being told he was being placed under arrest, Patterson said he was not going to be arrested and that the officer needed to kill him. All three officers stated that Patterson attempted to close the door on Officer Miracle and another police officer. At that point, Officer Van Kerkhove and another officer took Patterson to the ground. All three of the officers testified that Patterson continued to struggle and fight with the police officers. Officer Loesch described Patterson as combative because he was "failing to obey orders, resisting, continuing to flail, kick, and just be rebellious and aggressive." Officer Miracle stated that after several warnings, he deployed his taser, hitting

Patterson in the chest. However, Patterson continued to resist and attempted to remove the wires. Officer Miracle released the cartridge and ultimately drive stunned Patterson in an attempt to subdue him. Officers Van Kerkhove and Miracle testified that it took at least four officers to subdue Patterson.

{¶14} All three officers acknowledged that they were not injured by Patterson's actions. However, when asked, Officer Van Kerkhove acknowledged that there "[c]ould have been a possibility for injury." Similarly, when asked if somebody could have been injured during the incident, Officer Miracle replied, "absolutely" because "with [Patterson] fighting, he could have actually struck a[n] officer." He further stated, "We try to get compliance. But, when that wasn't happening the fight was continuing, it was to a point where either he was going to get hurt or my officers were going to get hurt, so we use another deterrent."

{¶15} This Court has specifically recognized that, "the potential risk of injury to an officer in pursuit of a suspect need not be a large one in order to support a conviction for obstruction of official business." *State v. Woodson*, 9th Dist. Wayne No. 07CA0044, 2008-Ohio-1469, ¶ 27. "Moreover, a risk of physical harm can exist when an officer attempts to restrain a suspect." *State v. Gordon*, 9th Dist. Summit No. 28331, 2017-Ohio-7147, ¶ 22, citing *State v. Vactor*, 9th Dist. Lorain No. 02CA008068, 2003-Ohio-7195, ¶ 39. Accordingly, upon review of the record in a light most favorable to the State, we conclude that there was sufficient evidence for the jury to find Patterson's conduct during the incident created a risk of harm.

**B. Venue**

{¶16} Patterson argues that the State presented insufficient evidence to establish venue in this case. However, a review of the record shows that although Patterson made a Crim.R. 29 motion for acquittal, he did not make specific objection to venue. Therefore, he has forfeited all

but plain error. *See State v. Price*, 7th Dist. Mahoning No. 14 MA 28, 2015-Ohio-1199, ¶ 37; *see also State v. Lamb*, 7th Dist. Mahoning No. 12 MA 224, 2013-Ohio-5683, ¶ 17-18 (collecting cases finding that a general Crim.R. 29 motion did not preserve the venue issue where no specific objection to venue was made.) Plain error may only be invoked where the following three elements exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

(Internal citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Nonetheless, plain error "is to be taken with the utmost caution, under exceptional circumstances[,] and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶17} Venue is proper in any county where the offense, or any element of the offense, was committed. R.C. 2901.12(A). Although venue is not a material element of an offense, the State must nevertheless prove venue beyond a reasonable doubt unless it is waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 477 (1983), citing *State v. Draggo*, 65 Ohio St.2d 88 (1981). Nonetheless, this Court has specifically recognized that "'venue need not be proved in express terms, where the evidence is such in the state's case, that no other inference can be reasonably drawn by the jury.'" *State v. Yarbour*, 9th Dist. Medina No. 04CA0008-M, 2004-Ohio-5444, ¶ 24, quoting *State v. Dickerson*, 77 Ohio St. 34 (1907), at paragraph one of the syllabus; *see Headley* at 477.

{¶18} On appeal, Patterson contends that the evidence presented at trial was not sufficient to establish venue beyond a reasonable doubt because none of the State's witnesses specifically stated that the alleged offenses took place in the State of Ohio. However, a review

of the evidence in this case indicates that the incident at issue took place in the State of Ohio. Both J.P. and R.W. testified that they lived at a specific address on Middle Avenue. J.P. stated that the Middle Avenue address was in Elyria. Officers Van Kerkhove, Miracle, and Loesch all testified that they were employed by the City of Elyria Police Department and were dispatched to the Middle Avenue address identified by J.P. and R.W. on April 18, 2016, in reference to a report of two men fighting with knives. Officer Van Kerkhove further testified that the Middle Avenue address was in Lorain County.

{¶19} While it would have been better practice for the State to have established that the incident took place in the State of Ohio, we conclude that no other reasonable inference can be drawn from the testimony other than that the events at issue took place in the State of Ohio. Accordingly, the trial court did not commit plain error when it failed to find sua sponte that the evidence presented was insufficient to prove venue in this case.

{¶20} Patterson further argues that his convictions are against the manifest weight of the evidence. A manifest weight challenge is legally distinct from a sufficiency challenge. *Thompkins*, 78 Ohio St.3d at 387. Nonetheless, Patterson's sole argument is that no evidence was presented that the incident took place within the State of Ohio. As we have already addressed that argument above, we conclude that Patterson's convictions are not against the manifest weight of the evidence.

{¶21} Therefore, Patterson's first assignment of error is overruled.

### Assignment of Error II

**The trial court erred by separately convicting and sentencing [Patterson] with respect to the obstructing official business and resisting arrest counts of the indictment, where those two offenses were allied offenses of similar import based upon the exact same facts.**

**{¶22}** In his second assignment of error, Patterson contends that his convictions for obstructing official business and resisting arrest were allied offenses of similar import and that the trial court erred by sentencing him separately as to those counts. We disagree.

**{¶23}** R.C. 2941.25 provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Supreme Court of Ohio has specifically stated, "[a]bsent a more specific legislative statement, R.C. 2941.25 is the primary indication of the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 11, citing *State v. Childs*, 88 Ohio St.3d 558, 561 (2000).

**{¶24}** However, a review of the record shows that Patterson did not argue at his sentencing hearing that his convictions were allied offenses. Thus, Patterson has forfeited all but plain error on appeal. *See State v. Mayfield*, 9th Dist. Summit No. 27655, 2015-Ohio-5375, ¶ 6, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3. Nonetheless, Patterson does not develop a plain error argument on appeal. Accordingly, we decline to fashion a plain error argument on Patterson's behalf and then address it sua sponte. *See* App.R. 16(A)(7); *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9.

**{¶25}** Therefore, Patterson's second assignment of error is overruled.

III.

**{¶26}** Patterson's assignments of error have been overruled. Therefore, the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.